IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FOREST RUPP, | ) | CASE NO. 4:11CV2174 |
| | ) | |
| Petitioner, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| WARDEN, LAKE ERIE CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Forest Rupp ("Rupp") for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 on July 12, 2011.  Rupp is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Rupp*, Case No. 04 CR 767 (Mahoning County 2008).  For the

reasons set forth below, Rupp's petition should be dismissed.

I.

The state appellate court reviewing Rupp's conviction during his direct appeal

found the following facts to be relevant to his case:

{¶ 2} On June 17, 2004, appellant was indicted for two counts of rape in violation

of R.C. 2907.02(A)(2), which entails engaging in sexual conduct with another by purposely compelling the other to submit by force or threat of force. The indictment alleged that he raped D.F. on March 18, 2004 in Austintown, Ohio.

{¶ 3} On the morning of the trial scheduled for September 29, 2004, appellant filed a speedy trial dismissal motion. He claimed that the time spent in jail since his March 25, 2004 arrest for a parole violation should count toward his speedy trial time because the rape allegations were the reason for his arrest, and he urged that he is entitled to triple time. The state countered that there was no "arrest" on this case for purposes of speedy trial until the indictment was served and that he is not entitled to triple time due to the parole holder.

{¶ 4} After various continuances and counsel's withdrawal, the motion was finally heard on April 5, 2005. Leave was then given to supplement the motion. On May 12, 2005, the court issued its decision denying appellant's dismissal motion. The court found that appellant was arrested for a parole violation by the Adult Parole Authority [APA] and that a hold was placed upon him thereafter. The court concluded that triple time does not run when a defendant is held on a parole or probation holder.

{¶ 5} On August 22, 2005, the jury trial commenced. Twenty-three-year-old D.F. testified that she was studying at the house of her classmate from Trumbull Business College, Amy Smiley. Amy lived on the west side of Youngstown with her two young children. D.F. had her eight-month-old daughter with her. D.F. testified that Amy told her that appellant was on his way over, that he was a lady's man and that she should stay away from him. When appellant arrived, D.F. observed that he was nice and good-looking. (Tr. 315). They showed each other their tattoos. (Tr. 318).

{¶ 6} When Amy's babysitter fell through, appellant volunteered to go to Wal-Mart with D.F. and her daughter. (Tr. 318). D.F. followed appellant to his sister's apartment in Austintown where he dropped off his vehicle. D.F. admitted that she let appellant kiss her while sitting on a swing at Wal-Mart; however, when he put his hand on her knee, she removed it and advised him that she "was not like that." (Tr. 325, 372). Appellant then revealed various troubling facts about his life that made her so afraid of him that she was tempted to run away from him at the store. (Tr. 326, 372-373).

{¶ 7} For instance, he told her that he was on parole for helping Martin Kolisar (the well-known shooter of a bar patron and murderer of a Youngstown police officer) elude the police during the national manhunt. (Tr. 323) Furthermore, he disclosed that he had been in prison for shooting a convenience store clerk, that he was not sorry for doing it and that he would do it again. (Tr. 323, 325-326). D.F. also noted that when her vehicle passed a police officer, appellant acted nervous and hurriedly put on his seatbelt. (Tr. 329).

{¶ 8} When she pulled into the apartment complex to drop appellant off, he continually put his hand on her leg despite her repeatedly pushing it away and telling him that she was "not like that" and that she did not want to "do anything." (Tr. 330-333). She opined that it should have been understood from her actions and protestations that she did not consent to further gropings. (Tr. 334).

{¶ 9} D.F. stated that appellant then put his hands up her shirt, but she removed his hands. (Tr. 334). She could not remember if he said anything besides asking her if he could "touch me just once" to which she responded, "no." (Tr. 335). When he started unbuttoning her clothes, she again removed his hands . However, he proceeded to put his hand down her pants. (Tr. 336-337).

{¶ 10} The defense notes that D.F. was 5'7" tall and weighed 170 pounds apparently in response to any suggestion that appellant could have lifted her over the console between bucket seats. (Tr. 338). However, D.F. admitted that she first pushed appellant away when he grabbed her ribs and attempted to pull her over the console, but she soon complied when he asked her to get on top of him. She complied because she feared what appellant would do to her due to his contemporaneous statements about his violent past and due to his refusal to abide by her physical and verbal protestations. (Tr. 339, 424-425, 428, 449-450). She also testified that appellant is taller and stronger than her, which the jury could judge for themselves as well. (Tr. 338). She ended up sitting on his lap where he removed her pants in spite of her stop commands and pushing. (Tr. 339-340).

{¶ 11} Appellant then switched their positions, putting her on the bottom with the seat reclined so far that her head was almost touching the baby's car seat. (Tr. 340-341, 424). She disclosed that she did not yell because she did not want to wake her baby and did not want her baby to see her being raped. (Tr. 336-337, 378, 428). She testified that he did not expressly threaten her at any time during the incident. (Tr. 377, 450). However, she was in fear of aggressively fighting him. She attested that she did not kick, hit or use any physical violence because she was afraid of what appellant would do to her. (Tr. 334, 338-339, 346, 403). D.F. stated, however, that throughout the encounter, she tried to push appellant away from her and repeatedly pulled back and said no and stop to his advances. (Tr. 331-342, 403, 427).

{¶ 12} Still, appellant pulled his pants down and engaged in vaginal intercourse with her. She disclosed that when he put his penis in her vagina, she again asked him to stop. (Tr. 341). She did not kiss him back during the sex act. (Tr. 342). D.F. started crying and was visibly upset. When appellant stopped, she told him that he made her "feel like whore." He responded that it would be okay, and he moved to the driver's seat. She was unsure if he ejaculated . (Tr. 342).

{¶ 13} D.F. then testified that appellant pulled her roughly by the back of the neck

3

and pushed her head down so she would perform oral sex on him.  (Tr. 343-344). She asked him to stop to no avail.  (Tr. 344).  She unwillingly performed oral sex on him for two to five minutes.  (Tr. 345, 445).  He did not ejaculate.  He then instructed her to kiss his tattooed penis goodbye.  (Tr. 345).

{¶ 14} D.F. testified that she did not call the police because she was afraid that appellant would come after Amy and Amy's children.  This belief was induced by arguments that occurred between appellant and Amy that night after appellant followed D.F., called her, instructed her to pull over, yelled at her for crying on the phone to Amy, grabbed the phone off her and followed her again.  (Tr. 348-358). She stated that appellant indirectly threatened her about going to the police.  (Tr. 430-431).

{¶ 15} The incident occurred late Thursday night.  On Saturday, D.F. received a telephone call at work from someone named Kim claiming to be appellant's parole officer.  (Tr. 359-360).  This person advised that appellant informed her of the allegations.  This person asked why D.F. did not scream or yell if the encounter was not consensual.  (Tr. 361).  D.F. called the APA on Monday and asked for appellant's parole officer named Kim.  She was connected with appellant's actual parole officer, a man named John Granger.  (Tr. 362).  She eventually told him her story, which started the investigation in this case.

{¶ 16} On Tuesday, D.F. went to the emergency room.  On Wednesday, the parole officer took her statement in person.  On Thursday, the parole officer arrested appellant, and D.F. gave a statement to the Austintown police.  It was brought out at trial that none of her statements mentioned that appellant told her about his past.  (Tr. 417).  She denied that she learned about his past from Amy prior to leaving the house with appellant.  (Tr. 453).

{¶ 17} However, Amy put in her statement and testified for the state that she told D.F. what she knew about appellant before he arrived at her house that evening. (Tr. 477).  She thought that she disclosed appellant's criminal past and his lack of respect for women in that he tries to have sex with everyone.  (Tr. 480, 500). Amy testified that she begged D.F. not to go with appellant and opined that D.F. was very naive.  (Tr. 480).  Amy then related that when D.F. arrived back at her house, she was crying and stating that appellant would not get off of her despite her telling him no.  (Tr. 490-491).

{¶ 18} Lastly, appellant's parole officer testified as to how he received the phone call from D.F. and how he took her statement.  (Tr. 523-527).  He revealed that he arrested appellant because the allegations constituted a parole violation.  (Tr. 528).  He also said that he encouraged D.F. to go to the police and that she was willing to testify at the parole violation hearings.  (Tr. 528-529).

{¶ 19} In closing, the state urged that appellant should be convicted of two counts

4

of rape, one for the vaginal penetration and one for the oral sex.  (Tr. 544).  The state also urged that the essential question was whether appellant overcame D.F.'s will by fear or duress from which they could infer a threat of force, and the court instructed accordingly.  (Tr. 597).  The defense objected to this instruction.

{¶ 20} On August 26, 2005, the jury returned a guilty verdict on count two but could not come to an agreement on count one.[1]  Thus, a conviction was entered on count two, and a mistrial was declared on count one.  (The retrial on that count has apparently been stayed pending our decision in this case.)  On August 30, 2005, appellant was then sentenced to ten years in prison and labeled a sexually oriented offender.

*State v. Rupp*, 2007 WL 969069, *1-*4 (Ohio App. March 27, 2007).

Rupp timely appealed his conviction.  Rupp raised seven assignments of error in his direct appeal:

Assignment of Error No. 1

Appellant was denied due process and the liberties secured by the United States Constitution and Ohio Const. Art. I, §§ 1, 2, 10 and 16 when he was convicted of the offenses of rape upon insufficient evidence.

Assignment of Error No. 2

Appellant was denied due process, a fair trial and the liberties secured by the United States Constitution Amend. V. & XIV and Ohio Const. Art. I,

---

[1]  Rupp points out that, in fact, it was not entirely clear as to whether the jury found him guilty of count one or count two of rape because they were identical.  The state appellate court took note of this in its opinion:

[A]ppellant complains that it is indeterminable which rape charge the jury convicted him of because neither the instructions nor the verdicts state which count was for vaginal rape and which count was for oral rape.  (Tr. 588-589, 591).  Similarly, the indictment did not specify which count was for which act.  This results in a very strange and confusing situation.  For the purpose of the instant appeal, however, there is not a problem.  That is, the record provides sufficient evidence for both vaginal and oral rape.  Thus, the effect of a verdict on only one of two unidentified rape counts is irrelevant here.

*Rupp*, 2007 WL 969069 at *11.  Rupp does not base any of his grounds for relief on this confusion, however.

§§10 and 16 when the trial court gave a jury instruction which eliminated the state's obligation to prove each element of the offense of rape.

Assignment of Error No. 3

The trial court erred in admitting "other acts" evidence which denied appellant a fair trial, undermined the presumption of innocence and denies [sic] due process, in violation of U.S. Const., Amend. Vi and XIV, and liberties secured by Ohio Const., Art I, §§ 1, 2, 10, and 16 and Ohio Evid. R. 404(b).

Assignment of Error No. 4

The trial court erred in permitting hearsay evidence in violation of the United States Constitution Amend. Vi and XIV and Ohio Constitution Art. I §10.

Assignment of Error No. 5

Appellant was denied due process of law and a fair trial by reason of improper prosecutorial argument.

Assignment of Error No. 6

The trial court erred in denying appellant's motion for discharge for violations of speedy trial.

Assignment of Error No. 7

Appellant was denied his right to a fair trial in violation of Untied [sic] States Constitution Amend. Vi and XIV as a result of the cumulative error which occurred throughout the trial.

(Capitalization altered from the original.) On March 27, 2007, the state appellate court overruled Rupp's assignments of error and affirmed the judgment of the trial court.

Rupp filed in the Ohio Supreme Court a timely notice of appeal of the state appellate court's decision. In his memorandum in support of jurisdiction, Rupp asserted five propositions of law:

Proposition of Law I: A person is deprived of due process of law and does not receive a fair trial when he is convicted of rape based upon an erroneous

6

application of the lessened standard for demonstrating the use of force announced in *State v. Eskridge* when there is no authority-figure/child relationship, and little or no disparity of age and size between the alleged victim and the defendant.  The resulting conviction is based upon insufficient evidence and must not stand.  5th & 14th Amend., U.S. Const.; §§10 & 16, Art. I, Ohio Const.

Proposition of Law II:  A person does not receive a fair trial when, in instructing the jury, the trial court eases the prosecution's burden of proof on any element, or omits any element that the prosecution must prove beyond a reasonable doubt.  Mr. Rupp did not receive a fair trial because the trial court improperly issued a jury instruction that eased the prosecution's burden of proof on the element of force.  5th & 14th Amend., U.S. Const.; §§10 & 16, Art. I, Ohio Const.

Proposition of Law III:  A trial is not conducted in accordance with due process principles when a conviction is obtained on the basis of the court's erroneous admission of "prior bad act" testimony and inadmissible hearsay.  5th, 6th, & 14th Amend., U.S. Const.; §§10 & 16, Art. I, Ohio Const.

Proposition of Law IV:  The prosecution's improper closing argument and disparagement of defense counsel in front of the jury violate a defendant's right to due process of law.  5th & 14th amend., U.S. Const.; §16, Art. I, Ohio Const.

Proposition of Law V:  A defendant is denied his right to a fair trial when the cumulative effect of the errors committed by the trial court and defense counsel is not harmless beyond a reasonable doubt.  5th, 6th, & 4th Amend., U.S. Const.

On September 14, 2007, the Ohio Supreme Court dismissed Rupp's appeal as not involving any substantial constitutional question.

On July 12, 2006, while his direct appeal was proceeding, Rupp filed in the trial court a petition to vacate or set aside his judgment pursuant to Ohio Rev. Code § 2953.21.  Rupp asserted a single ground for relief in his petition:

Petitioner Rupp's conviction for rape is void or voidable because he was deprived of his right to the effective assistance of [trial] counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

The state moved for summary judgment, and the trial court held an evidentiary hearing on the matter.  On July 24, 2008, the trial court sustained the state's motion for

7

summary judgment and denied the petition.

Rupp timely appealed the denial of his petition.  He asserted two assignments of error on appeal:

First Assignment of Error:

> Mr. Rupp was denied his state and federal constitutional rights at trial, and the trial court erred when it denied Mr. Rupp postconviction relief.

Second Assignment of Error:

> Petitioner Forrest[2] Rupp was deprived of his right to the effective assistance of trial counsel under the Ohio and United States Constitutions when trial counsel failed to present a defense, despite having subpoenaed crucial defense witnesses to testify on Mr. Rupp's behalf.

Before the appellate court ruled on this appeal, Rupp and the state filed a joint motion to remand for the purpose of entering findings of fact and conclusions of law.  The state appellate court granted the motion and remanded the case to the trial court with instructions to make the requisite findings of fact and conclusions of law.  The state appellate court than dismissed the appeal for lack of a final appealable order.

On August 8, 2009, the trial court entered an amended judgment entry which dismissed Rupp's petition and included findings of fact and conclusions of law.

Rupp again filed a timely appeal of the dismissal of his petition.  Rupp asserted the same two assignments of error in that he had raised in his previous appeal.  On June 4, 2010, the state appellate court found Rupp's two assignments of error to be without merit and affirmed the judgment of the trial court.

Rupp timely filed a notice of appeal to the Ohio Supreme Court.  In his

---

[2]  The spelling of Rupp's first name varies in the documents before the court.

memorandum in support of jurisdiction, Rupp asserted two propositions of law:

> Proposition of Law No. I:
>
>> A trial court errs when it fails to grant a properly-filed postconviction petition that demonstrates that defense counsel's performance was ineffective.
>
> Proposition of Law No. II:
>
>> Trial counsel is ineffective and denies a defendant his federal and state constitutional rights when he fails to subpoena available and willing witnesses whose testimony would dismantle the State's case by calling its star witness' testimony into question.

(Capitalization altered from the original.)  On October 13, 2010, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On March 20, 2008, prior to his re-trial on count one of the indictment, Rupp filed a motion to dismiss, arguing that a second trial on the first count of the indictment would constitute double jeopardy.  The state conceded that Rupp was correct and moved to dismiss the case.  On March 27, 2008, the trial court granted the parties' motions to dismiss.

Rupp filed in this court his petition for a writ of habeas corpus on October 13, 2011.  Rupp asserts three grounds for relief in his petition:

> GROUND ONE: A person is deprived of due process of law and does not receive a fair trial when he is convicted based upon insufficient evidence.  A conviction of rape is based upon insufficient evidence when it is predicated on an erroneously lessened standard for demonstrating the use of force.  Fifth and Fourteenth Amendments, United States Constitution.
>
> GROUND TWO:  A person does not receive a fair trial when, in instructing the jury, the trial court improperly issues a jury instruction that eases the prosecution's burden of proof on the element of force in a trial for rape.  Fifth and Fourteenth Amendments, United States Constitution.

9

GROUND THREE:  The prosecution's improper closing argument and disparagement of defense counsel in front of the jury violate a defendant's right to due process of law.  Fifth and Fourteenth Amendments, United States Constitution.

Respondent filed an Answer/Return of Writ on January 20, 20112.  Doc. No. 6.  Rupp filed a Traverse on April 12, 2012.  Doc. No. 10.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Mahoning County, Ohio sentenced Rupp.  Rupp filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Mahoning County is within this court's geographic jurisdiction.  This court has jurisdiction over Rupp' petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Rupp's claims involve legal issues that can be independently resolved without additional factual inquiry.

10

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Rupp has no state remedies available for his claims.  Because no state remedies remain available to him, Rupp has exhausted state remedies.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

11

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See  McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Respondent does not argue that Rupp has procedurally defaulted any of his grounds for relief.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006);

12

*Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Rupp's grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Grounds one and two:  Whether Rupp's conviction was upon insufficient evidence and whether the jury instruction on force violated due process*

Rupp's first ground fo relief contends that he was deprived of due process because an erroneous jury instruction lessened the burden for finding the element of force, which resulted in his being convicted upon insufficient evidence.  His second

13

ground for relief contends that the same improper jury instruction resulted in a fundamentally unfair trial.  Respondent denies both contentions.  These claims are intertwined and shall be considered together.

Although the first and second grounds for relief assert federal constitutional violations, both claims hinge upon a question of state law:  Whether the instruction to the jury on the element of force was correct.  Federal courts generally do not grant habeas relief for alleged errors arising under state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A ruling by a state's highest court on a matter of state law is binding on federal courts.  *Wainwright v. Goode,* 464 U.S. 78, 84 (1983).  The decision of a state appellate court on a question of state law is also binding on federal courts unless those courts are convinced that the highest state court would decide the issue differently.  *Olsen v. McFaul,* 843 F.2d 918, 933 (6th Cir. 1988).

An error of state law may serve as a basis for habeas relief only when the error denied the petitioner fundamental fairness in the trial process.  *Estelle*, 502 U.S. at 67-68; *see also Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  An error of state law so severe as to deny fundamental fairness offends the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").  An error of state law, however,

14

violates due process only when it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Giles v. Schotten,* 449 F.3d 698, 704 (6th Cir. 2006).  Where the alleged error accords with the rulings of state courts, "the circumstances that would induce a federal court to overturn the state court determination would need to be extraordinary, indeed." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

In the present case, Rupp argues that the latter half of the following jury instruction was erroneous:

> Force means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.  If the state proves beyond a reasonable doubt that the defendant overcame the victim's will by fear or duress, you may infer from those facts the element of force.

Transcript of Proceedings ("Tr."), Answer, Exh. 46, p. 590.

In determining whether the trial court erred in giving this instruction, the state appellate court performed an extended analysis of state appellate cases and of Ohio Supreme Court cases before concluding that the instruction was a correct statement of Ohio law.  Upon appeal to the Ohio Supreme Court, that court declined jurisdiction on the ground that the case failed to present a substantial constitutional question.  Thus, an Ohio appellate court determined that the instruction was correct, and the Ohio Supreme Court declined to review that opinion.  Consequently, this court may only provide habeas relief if it believes that the Ohio Supreme Court would have ruled otherwise or if the challenged instruction was an error of state law so severe as to deny fundamental fairness.

This court does not believe that the Ohio Supreme Court would have ruled

15

otherwise on the matter.  First, that court had the opportunity to correct the state appellate court's judgment had that judgment been erroneous, and it declined to do so. This undercuts the allegation that the state appellate court erred.  Second, the state appellate court's analysis rested primarily on the Ohio Supreme Court's holdings:

> {¶ 26} "It is a well-known rule that, while consent negatives rape, where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape, even though the victim might have used greater physical resistance or cried out, when it is shown that her will was overcome by the fear or duress."  *State v. Martin* (1946), 77 Ohio App. 553, 554 (involving an adult victim).

> {¶ 27} As a matter of fact, after stating: "As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established," the Ohio Supreme Court utilized a quotation containing a cite to this *Martin* case.  *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59, quoting *State v. Fowler* (1985), 27 Ohio App.3d 149, 154.

> {¶ 28} Appellant distinguishes *Eskridge* because it dealt with a four-year-old child being raped by her father.  The Court concluded:  "Eskridge was the victim's father and, at the time of the rape, was babysitting her.  He therefore held a position of authority over her which did not require any explicit threats or displays of force."  *Id.*  The Court therefore found an implicit threat in a parent's command to a child of tender years.  *Id.* at syllabus ¶ 1.  Still, the Court's statement regarding overcoming the victim's will was not specified to apply only to position of authority over children cases. It was set forth as general law.

> {¶ 29} In a later case relied upon by appellant, the Supreme Court refused to apply the *Eskridge* assumption of force or threat of force to the case of a twenty-year-old daughter who had sex with her father where there was a pattern of incest from years past.  *State v. Schaim* (1992), 65 Ohio St.3d 51.  The Court found that the implicit threat of *punishment* (including disciplinary measures other than force) does not apply to an adult child.  *Id.* at 55.  The Court, however, declared:

> {¶ 30} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant

16

might use physical force against her." *Id.*

{¶ 31} The Court essentially held three things: (1) the almost automatic finding of force or threat of force for children who are raped by those in a position of authority over them does not apply to adults; (2) yet, *even in the case of an adult victim, a threat of force can be inferred from the circumstances if the defendant somehow purposefully caused the victim to believe he would use force against her;* (3) but, mere past incest does not establish a threat of force where the victim does not testify that she was in fear of physical force. Thus, the *Schaim* case cited by appellant is contrary to his current position.

{¶ 32} Appellant's argument fails to distinguish between the finding of force or threat of force for cases of children raped by those in authority positions due to fear of discipline and the mere ability of a jury to infer a threat of force in all cases where the victim's will is overcome by fear or duress even where no express, direct threat of force is made. That is, in the case of a young child and a parent, the state need not even prove the victim's will was overcome by fear or duress. Rather, such fact can be presumed.

{¶ 33} Conversely, in other types of rape cases, the state must prove force or threat of force either through direct evidence of such or by inference where the defendant overcame the victim's will by fear and duress. Thus, if the defendant created the belief that physical force will be used in the absence of submission, then threat of force can be inferred. Nothing in the rape statute requires the threat of force to be direct or express. Thus, threat of force includes both explicit and implicit threats.

*State v. Rupp*, 2007 WL 969069 (Ohio App. March 27, 2007). The state appellate court went on to examine *State v. Rodriguez*, 2003 WL 23009098 (Ohio App. Dec. 24, 2003), a case from Ohio's Eighth Appellate District, cited by Rupp for the proposition that duress could never be inferred from the circumstances of a rape. The court examining Rupp's claim concluded that although the opinion in *Rodriguez* was somewhat confused, it did not stand for the proposition that duress could never be inferred from the circumstances of a rape but, in fact, stood for the opposite proposition.[3] For this

---

[3] Indeed, Ohio's Eighth Appellate Court later cited *Rodriguez* as standing for the proposition that duress *could* be inferred from the circumstances of a rape. *See State v. Jackson*, 2010 WL 2635062, at *6 (Ohio App. July 1, 2010).

reason and from its analysis of relevant Ohio Supreme Court case, the state appellate court concluded that the trial court's jury instruction on force was correct.  There is no reason to believe that the Ohio Supreme Court would rule otherwise.

In addition, Rupp fails to cite any Supreme Court holding for the proposition that a jury instruction stating that the element of force may be inferred when a defendant overcomes a victim's will by fear or duress violates fundamental fairness.  For these reasons, Rupp's argument in his second ground for relief, that an improper jury instruction regarding force resulted in a fundamentally unfair trial, is not well-taken.

Rupp's first ground for relief is similarly without merit.  In his first ground for relief, Rupp argues that he was deprived of due process because an erroneous jury instruction lessened the burden for finding the element of force, which resulted in his conviction upon insufficient evidence.  As there is no reason to believe that the jury instruction in question was erroneous, Rupp's argument that an erroneous instruction deprived him of due process collapses.  And, again, Rupp cites no holding of the Supreme Court which would demonstrate that the jury instruction in question violates fundamental fairness.  For these reasons, Rupp's argument in his first ground for relief, that an improper jury instruction regarding force resulted in his being convicted upon insufficient evidence, is not well-taken.


B.      *Ground three:  Whether prosecutorial misconduct during closing argument
        violated Rupp's right to due process*

In his third ground for relief, Rupp argues that an improper closing argument by the prosecution denied his right to due process.  In particular, Rupp alleges misconduct

18

when the prosecution did each of the following:  (1) gave the rebuttal argument at the close of the case, despite having told the jury earlier that his female assistant would give it, because "he just had to close"; (2) disparaged defense counsel's motives for objecting as attempts to throw the prosecution off track; and (3) made personal comments during rebuttal and appealed to passion with such remarks as "what do we tell our children, our women, our female children?"  Tr. at 573, 577.

An allegation of prosecutorial misconduct asserts a violation of due process. "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted). To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also  United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir.2000).

Prosecutorial misconduct is subject to harmless error analysis.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  On direct review of a defendant's conviction, state courts apply the harmless error standard described in *Chapman v. California,* 386 U.S. 18 (1967), "harmless beyond a reasonable doubt."  *See Fry v. Pliler*, 551 U.S. 112,

19

116-117 (2007).  On federal habeas review, a federal court applies the harmless error

standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), whether a trial

error "had substantial and injurious effect or influence in determining the jury's verdict."

*Fry*, 551 U.S. at 116-117.

In the present case, the state appellate court made the following findings of fact

and conclusions of law in overruling the corresponding claim during Rupp's direct

appeal:

> {¶ 83} Upon an argument of prosecutorial misconduct, the reviewing court must determine whether the remarks were improper and if so whether the remarks prejudicially affected the defendant's substantial rights.  *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio2417, ¶ 45.  The ultimate inquiry is the fairness of the trial, not the culpability of the prosecutor.  *Id.*  A trial is not deemed unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.  *Id.* "'[G]iven the myriad [of] safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial."  *State v. Jones* (2000), 90 Ohio St.3d 403, 422 (dealing with allegations of prosecutorial misconduct on rebuttal in a capital case).

> {¶ 84} Appellant sets forth various instances of alleged prosecutorial misconduct during only the rebuttal portion of closing arguments by the prosecutor who sat second chair and who had previously advised that he was the supervisor of the criminal division.  First, appellant takes issue with the prosecutor's explanation as to why he decided to step in for rebuttal.  That is, he stated that he was not going to be there that afternoon because primary counsel (who was a female) could handle the case.  (Tr. 572).  However, he disclosed that he subsequently decided that he should talk to the men about the mistaken belief in a "no blood/no foul" defense.  He urged that the victim need not take a beating to prove rape and "no means no."  (Tr. 572-577).

> {¶ 85} Such statement was not misconduct or even prejudicial to appellant merely because it may, in implication, be a bit sexist to the female prosecutor or to males in general.  Appellant believes that the mere taking over for rebuttal was an attempt to convey the impression that the senior attorney felt the case was of utmost importance.  This may be true.  However, we are aware of no rule against such tactic, and appellant does not cite one to us.

{¶ 86} Appellant then claims that the prosecutor improperly appealed to the jurors' passions by asking, "what do we tell our children, our women, our female children? You got to fetch a beating, you got to risk your life * * *." (Tr. 577). However, such statements are not improper.  Further, there is no indication that the statements were so inflammatory that the convictions were the result of passion and prejudice rather than proof of guilt.  See *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 113.

{¶ 87} Appellant next contends that the prosecutor improperly expressed personal beliefs.  Contrary to appellant's suggestion, the Supreme Court has not stated that prosecutors cannot express personal beliefs in general.  Rather, the cases cited by appellant provide only that prosecutors may not express personal beliefs regarding the guilt of the accused or the credibility of a witness.  *State v. Lott* (1990), 51 Ohio St.3d 160, 166; *State v. Smith* (1984), 14 Ohio St.3d 13, 14. In any event, the above quote is not a personal belief, and appellant does not cite to any other specific instances.

{¶ 88} Finally, appellant urges that the prosecutor disparaged defense counsel by mentioning that defense counsel's objection threw him off his train of thought. (Tr. 579).  However, this was a mere observation and explanation as to why the prosecutor could not remember what he was going to say.  It was not an implication that defense counsel's objections were improper.  Reading the statement in its context, this situation is wholly distinct from that in the case appellant cites.  See *State v. Keenan* (1993), 66 Ohio St.3d 402, 406 (where the state replied to a defense objection by declaring that the state objected to the victim's death and where the state alleged that defense counsel was objecting to cover up the truth).  As such, this assignment of error is overruled.

*State v. Rupp*, 2007 WL 969069 (Ohio App. March 27, 2007).  In sum, the state appellate court found that the prosecutor's remarks were either not improper under Ohio law or were not prejudicial to Rupp or both.

Rupp does not demonstrate that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. Rupp continues to allege in his traverse that the prosecutor accused defense counsel of trying to throw him off his train of thought.  The prosecutor said the following after a defense objection:  "That type of thing -- throw [sic] me off my train of thought."  Tr. at 579.  While Rupp may disagree with the state appellate court's interpretation of the

remark as "a mere observation and explanation as to why the prosecutor could not remember what he was going to say" and not "an implication that defense counsel's objections were improper," the state appellate court's interpretation is hardly unreasonable.  Rupp's traverse also alleges, "Throughout the jury trial, the prosecutor engaged in misconduct that entitled Mr. Rupp to a new trial."  Traverse at 10.  There are two problems with this.  First, Rupp gives just one example of a remark outside of closing arguments that allegedly disparaged defense counsel by implication.  This does not demonstrate misconduct "throughout the trial."  Second, Rupp's petition alleges only misconduct during closing arguments, not elsewhere in the trial.  Consequently, this court limits its examination of prosecutorial misconduct to alleged misconduct during closing.  Rupp has failed to demonstrate, therefore, that the state appellate court's determination of the facts was unreasonable.

Rupp also fails to demonstrate that the state appellate court's general summary of the applicable federal law was incorrect or that the state court's application of the law to the facts was unreasonable.  Rupp also fails to cite any Supreme Court case holding that the accused prosecutorial remarks were constitutionally improper.

Finally, Rupp fails to demonstrate that the accused remarks in closing argument had a substantial and injurious effect on the jury's verdict.  At most, the majority of the accused comments could be interpreted as implied criticism of defense counsel or merely statements implying that the prosecutor thought the case important enough that he should give the rebuttal himself.  Rupp's assertion that such remarks were likely to affect the jury's deliberations in any significant way is entirely unconvincing.  As regards the line, "what do we tell our children, our women, our female children?," that statement

22

was part of the prosecutor's contention that the law does not require a woman to risk serious injury before subsequent sex becomes rape.[4]  As already discussed, that contention is accurate under Ohio law.  Rupp fails to explain, therefore, how the statement, "what do we tell our children, our women, our female children?," had a substantial and injurious effect on the jury's verdict.

Rupp fails to demonstrate that the state appellate court's determination on the issue of prosecutorial misconduct was based on an unreasonable determination of the facts based on the evidence adduced at trial, was contrary to the holdings of the Supreme Court, or involved an unreasonable application of Supreme Court holdings. Consequently, Rupp's third ground for relief, that prosecutorial misconduct violated his right to due process,, is without merit.

IV.

---

[4]  In relevant part, the prosecutor's remarks were as follows:

[PROSECUTOR]:  It's the rape, it's what happened.  People -- men can't do that.  Guys, you can't.  A woman says no, I'm not doing it, I'm out.  That's the rule. That's what happens.  It's done.  It's over.  Go past that and you got a problem. Because what do we tell our children, our women, our female children?  You got to fetch a beating, you got to risk your life, in this case, you got to risk your baby's life with a violent person or else you have no recourse at law, nothing to protect you from that type of violation so that you can be safe in your person, nothing could keep you from that humiliation, nothing could protect you from people like Forest Rupp? Do we tell them that?  That's what I'm asking you today.  Or do we tell them and tell our sons --

[DEFENSE COUNSEL]:  Objection.

[PROSECUTOR]:  -- no means no.  You don't do these things.  When a woman says I'm out, I'm not doing this, I'm not that type of person, no, that's the end of it.  You cannot go farther and say, oh, consensual.

Tr. at 577-78.

23

For the reasons given above, Rupp's three grounds for relief are without merit, and his petition should be dismissed with prejudice.


Date:  April 23, 2012                          /s/ Nancy A. Vecchiarelli
                                               United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**