UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|  |  |  |
|---|---|---|
| FORREST RUPP, | : | CASE NO. 4:11-CV-2174 |
| Petitioner, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. 1] |
| WARDEN, Lake Erie Correctional | : | |
| Institution, | : | |
| Respondent. | : | |
| | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Forrest Rupp[1] ("Petitioner") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.] Magistrate Judge Vecchiarelli filed a Report and Recommendation ("R&R"), recommending that the petition should be denied. [Doc. 11.] Petitioner objects and says that the state trial court erred in its assessment of Ohio law and that the prosecution acted inappropriately. [Doc. 14.] The Court concludes that clearly established federal law was not violated, **ADOPTS** the R&R, and **DENIES** Rupp's Petition.

I.

Neither Petitioner nor Respondent objects to the state appellate court's recitation of the facts, so the Court adopts those factual and procedural recitations. Accordingly, only a brief background summary is necessary. On March 18, 2004, Petitioner and D.F., along with D.F.'s infant daughter, went to a Wal-Mart. On the way back to a friend's home, Petitioner began touching D.F. in the car against her will. D.F. continually resisted Petitioner's advances, and Petitioner eventually put his hands down D.F's pants. Petitioner then asked D.F. to crawl across the car's center console and lay

---

[1]Petitioner's first name is spelled both "Forest" and "Forrest" on relevant court documents. For the purposes of this Order, the Court adopts the spelling reflected in Petitioner's recent filings.

Case No. 4:11-CV-2174
Gwin, J.

on top of him.  She did, but continued to protest.  Petitioner and D.F. eventually had both vaginal

and oral sex.

Petitioner was charged with two counts of rape in violation of Ohio Revised

Code § 2907.02(A)(2) , which criminalizes sexual conduct of another by purposely compelling the

other to submit by force or threat of force.  During closing arguments, the state posited that the

essential question was whether Petitioner overcame D.F.'s will by fear or duress from which the jury

could infer a threat of force.  The trial court instructed the jury to this effect as well.  *See* Trial Tr.

at 590 ("If the state proves beyond a reasonable doubt that the defendant overcame the victim's will

by fear or duress, you may infer from those facts the elements of force.").  The defense objected to

this instruction.  The jury returned a guilty verdict on the second count, but could not come to an

agreement on the first count.[2]  Petitioner was thereafter sentenced to ten years in prison and labeled

a sexually oriented offender.

Petitioner unsuccessfully appealed his conviction to the Ohio Court of Appeals.  *State v.*

*Rupp*, 2007 WL 969069 (Ohio Ct. App. Mar. 27, 2007).  The Ohio Supreme Court denied leave to

appeal.  *State v. Rupp*, 872 N.E.2d 953 (Ohio 2007).  Petitioner's petitions for state post-conviction

relief were also denied.  *State v. Rupp*, 2010 WL 2249929 (Ohio Ct. App. June 4, 2010); *State v.*

*Rupp*, 935 N.E.2d 46 (Ohio 2010).

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a district

court shall not issue the writ of habeas unless a state court's decision "was contrary to, or involved

---

[2]Oddly, it is unclear from the record which rape act constituted count one, and which constituted count two.
*See, e.g.*, *Rupp*, 2007 WL 969069, at *11 ("This results in a very strange and confusing situation.").  As the Magistrate
Judge noted, however, this confusion is unrelated to Petitioner's claims of error articulated in his habeas petition.

Case No. 4:11-CV-2174
Gwin, J.

an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 387 (2000) (Section 2254(d) requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails.") (citation omitted).

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Here, Petitioner has filed objections to each of the Magistrate Judge's recommendations.

III.

Petitioner raises three grounds for relief. All parties, as well as the Magistrate Judge, agree that each claim has been properly preserved for review. As the first and second grounds are considerably intertwined, this Court will address those claims together.

A. Claims One and Two—The Inference of Force

Petitioner's first claim is that he was denied due process of law and did not receive a fair trial because he was convicted based upon insufficient evidence. [Doc. 1-1.] The basis for this claim is that no evidence produced at trial indicated that Petitioner used actual force at any point during the rape. [*Id.*] Rather, Petitioner argues, the trial court instructed the jury that it could infer force if the victim experienced fear or duress. This claim thus begets the second claim: Petitioner did not receive a fair trial because the trial court improperly issued a jury instruction that eased the prosecution's burden of proof on the element of force. [*Id.*]

These claims boil down to the same fundamental issue: whether the trial court's instruction

Case No. 4:11-CV-2174
Gwin, J.

to the jury on an issue of state law—the inference of force—was correct.  The Magistrate Judge

noted that an alleged error of state law serves as the basis for a successful habeas petition only if the

error denied the petitioner fundamental fairness in the trial process.  [Doc. 11, at 14 (citing *Estelle*

*v. McGuire*, 502 U.S. 62, 67-68 (1991).]  The alleged error must be so severe as to offend the due

process clauses of the Fifth and Fourteenth Amendments of the United States Constitution.  *United*

*States v. Agurs*, 427 U.S. 97, 107 (1976).  Generally, however, this Court is bound by an

intermediate state appellate court's judgment on an issue of state law where the state's highest court

has not spoken.  *Priest v. Hudson*, 655 F. Supp. 2d 808, 829 (N.D. Ohio 2009) (citing *Olsen v.*

*McFaul*, 843 F.2d 918, 929 (6th Cir. 1988)).  If this Court is convinced that the state supreme court

would decide the question differently than the state appellate court, such deference is unnecessary.

*Id.*

Here, the Ohio Court of Appeals engaged in a lengthy discussion of whether the trial court's

instruction on the inference of force was correct.  *Rupp*, 2007 WL 969069, at *5-6.  That court first

cited to *State v. Martin*, 77 Ohio App. 553, 554 (Ohio Ct. App. 1946), which stated that a rape could

occur "even though the victim might have used greater physical resistance or cried out, *when it is*

*shown that her will was overcome by the fear or duress*."  (emphasis added).  The *Rupp* court also

noted that the Ohio Supreme Court has held that "[a]s long as it can be shown that the rape victim's

will was overcome by fear or duress, the forcible element of rape can be established."  *State v.*

*Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988).

Petitioner asks this Court to disregard the Ohio Supreme Court's statement in *Eskridge*,

because that case involved a rape of a child by her parent, rather than sexual contact between two

-4-

Case No. 4:11-CV-2174
Gwin, J.

adults.[3/]  He then points to the Ohio Supreme Court's subsequent holding in *State v. Schaim*, 600 N.E.2d 661 (Ohio 1992) which apparently disclaimed *Eskridge*'s applicability to a rape between adults.  This proposition is misleading for a number of reasons.  First, *Schaim* cabins only the direct holding of *Eskridge*—that is, that coercion can be inferred from a parent-minor child relationship. It does not stand for a repudiation of *Eskridge*'s reliance upon *Martin*, a rape case where there was no evidence of a relationship marked by such an imbalance of power.  And second, the Ohio Supreme Court specifically stated in *Schaim* that "[a] threat of force can be inferred from the circumstances surrounding sexual conduct . . . ." *Schaim*, 600 N.E.2d at 663.  *Schaim* more rightly stands for the proposition that a history of incest between a parent and minor child cannot satisfy the force inference in a rape between a parent and an *adult* child.

Further, the Ohio Supreme Court had the opportunity to correct any misjudgments of law in Rupp's state appellate and post-conviction proceedings.  It twice declined to do so.  *State v. Rupp*, 872 N.E.2d 953 (Ohio 2007); *State v. Rupp*, 935 N.E.2d 46 (Ohio 2010).  This Court is not convinced that the Ohio Supreme Court would decide this issue differently if presented with it directly.  *Olsen* therefore requires deferring to the state appellate court's judgment as articulated in *Martin*.  In response, Petitioner says that the Ohio Supreme Court's refusal to review the appeals courts' judgments should not be a bar to relief, as that court reviews very few non-capital felony cases.  This Court agrees that this factor is not particularly weighty, though it does lend some support to deferring to the Ohio Court of Appeals's decision in *Martin*.

Deciding whether the Ohio Court of Appeals made an incorrect pronouncement of state law is not usually for this Court to review.  In certain circumstances, of course, such review is warranted

---

[3/]Petitioner also fails to cite to any Supreme Court opinion stating that such an instruction was improper.

Case No. 4:11-CV-2174
Gwin, J.

when there are serious concerns of unfairness or due process at issue.  No such issues are present.

Petitioner was convicted based on jury instructions in line with Ohio law and without conflict with

Supreme Court authority.  *See* *Schaim*, 600 N.E.2d at 665 ("A threat of force can be inferred from

the circumstances surrounding sexual conduct . . . .").  Consequently, if the alleged error in the jury

instructions is not cognizable on habeas review, the same fate must befall Petitioner's sufficiency

of the evidence claim.[4/]  That claim—that the appellate court erred in applying a diminished standard

of force—is part and parcel of the jury instruction argument.  Accordingly, Petitioner's first and

second grounds for relief are denied.

B.  Claim Three—Prosecutorial Misconduct

    Petitioner's final claim for relief is that the prosecutor acted improperly during the closing

arguments phase of the trial.  [Doc. 1-1 .]  To successfully assert a prosecutorial misconduct claim

in a habeas proceeding, it is not enough that the prosecutor acted improperly.  The relevant question

is whether the prosecution's conduct so infected the trial with unfairness as to render the trial

fundamentally unfair or make the resulting conviction a denial of due process.  *See* *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986).  With these considerations in mind, the Court addresses each

of the prosecutor's challenged actions in turn.

1.  Disparagement of defense counsel and defense counsel's motive for objecting

    First, Petitioner suggests that the prosecutor acted unprofessionally in responding to defense

counsel's objections.  As the prosecutor examined the victim, he sought information on what the

---

[4/]It bears noting that the Ohio Court of Appeals fully considered whether there was sufficient evidence to support the jury's inference.  "D.F. testified that she was in fear of [Petitioner] and what he would do to her if she resisted due to his recent revelation of his disturbing criminal past combined with his perpetual advancement upon her without heeding her commends to stop of her physical attempts to stop him."  *Rupp*, 2007 WL 969069, at *10.

Case No. 4:11-CV-2174
Gwin, J.

victim told to a friend.  [Doc. 10.]  Defense counsel objected four times over twenty-five lines of the transcript.  After the last of these objections, the prosecutor exclaimed, "Oh, God!"  Later, during the prosecution's rebuttal, defense counsel objected to the characterization of the facts of the case.  In response, the prosecutor stated, "that type of thing—throw me off my train of thought."  [Id. at 15-16.]

The Ohio Court of Appeals noted that this last statement was "a mere observation and explanation as to why the prosecutor could not remember what he was going to say.  It was not an implication that defense counsel's objections were improper."  Rupp, 2007 WL 969069, at *16.  That court did not discuss the exclamatory statement.  Petitioner argues here that these comments improperly denigrated and "ridiculed" defense counsel in front of the jury.  [Doc. 14, at 8.]  While the exclamatory statement could perhaps be construed that way (though a less malicious interpretation is more appropriate), the other statement cannot, without a particularly strained interpretation.  Regardless, neither statement was prejudicial or misleading, nor were they made with animus or deliberation.  The statements cannot be said to have so infected the trial process as to have denied Petitioner a fair adjudication.

2.  Statements and personal feelings of the prosecutor

During the rebuttal portion of closing arguments, one prosecutor stated:

I wasn't going to be here this afternoon because Attorney Krueger is able to do this herself, try this case, and I was thinking about it since I sat through it.  I said, yeah, I've got to be, and there is a purpose that I hadn't thought of, and I'll tell you why because I've been doing this for 30 years, and I said this closing argument is going to be directed at the men.  It's going to be a no blood/no foul argument.  So being a man, I said I got to get up and talk to the men—no offense to the ladies—cause that's what it is, no blood/no foul.

Petitioner claims that this statement improperly described the personal feelings of the

-7-

Case No. 4:11-CV-2174
Gwin, J.

prosecutor.  A prosecutor may not make statements to a jury revealing whether he personally thinks the defendant is guilty.  *United States v. Young*, 470 U.S. 1, 19 (1985).  But that is not what this is. Petitioner fails to cite any relevant Supreme Court case, but instead states that the prosecutor's intervention "was an attempt to bolster the State's case through his personal appearance."  While the prosecutor's statement may border on sexist, it is not improper.  When read in context, it does not appear to be of the sort that would mislead the jury or unfairly prejudice the defendant.  Rather, it is an attempt by the prosecutor to remind jurors that the absence of physical force is not a defense to rape.

3.  Appeals to emotion during rebuttal argument

Finally, Petitioner claims that a prosecutor twice improperly appealed to the jury's emotions. During rebuttal argument, a prosecutor asked the jury, "what do we tell our children, our women, our female children?"  This Court agrees that such a comment was improper, for it was "calculated to incite the passions and prejudices of the jurors" rather than requiring a decision based on "the evidence and law of the case."  *Gall v. Parker*, 231 F.3d 265, 315 (6th Cir. 2000) (quotations omitted), *abrogated on other grounds by Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).  But, that statement was made in isolation, and by itself is not enough to warrant a grant of the petition.

The other complained of statement, however, cannot be said to be similarly improper.  Also during rebuttal, a prosecutor characterized the defendant's theory that the victim consented to Petitioner's advances.  The prosecutor stated, "[a]ccording to [the defense], she knew [Petitioner] was a bad guy when she went out with him.  She went to Wal-Mart; therefore to quote his client, she asked for it.  Now, there should be a law in this country that any time any one person says something stupid to the person standing next to them gets a smack."  This statement was, perhaps, a bit brazen.

Case No. 4:11-CV-2174
Gwin, J.

But, it was not improper, as it was not likely to mislead the jury or prejudice them.  Rather, the prosecution attempted to discredit Petitioner's theory of the case, which is both expected and encouraged in an adversarial process.  The comment had neither the intent nor the consequence of denigrating Petitioner or his counsel.

Taken together, the comments put forth by Petitioner were not so inflammatory as to deny him due process by tainting his trial.  While Petitioner surely believes that his trial was not perfect, an imperfect trial is not the same as an unfair one.  *Darden*, 477 U.S. at 188 (Blackmun, J., dissenting).

IV.

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Rupp's petition for a writ of habeas corpus.  Further, the Court certifies that an appeal from this decision could be taken in good faith as to Petitioner's first and second grounds for relief (jury instructions and sufficiency of the evidence).  No basis exists upon which to issue a certificate of appealability as to Petitioner's third ground for relief (prosecutorial misconduct).  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

Dated: December 3, 2012                         s/      *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE